## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Jessica Heppard,

                Plaintiff,        Case No. 23-cv-10834

v.                              Judith E. Levy
                               United States District Judge

Dunham's Athleisure Corporation,

                               Mag. Judge Anthony P. Patti

                Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS [12]

Plaintiff Jessica Heppard brings a putative collective action and class action suit under the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wages Standards Act ("OMFWSA"). (ECF No. 1, PageID.9–13.) She alleges that Defendant Dunham's Athleisure Corporation had a policy and practice of not paying employees for all hours worked, including for overtime, and that Defendant also failed to keep accurate records. (*Id.* at PageID.4–8.)

Before the Court is Defendant's motion for judgment on the pleadings. (ECF No. 12.) The motion is fully briefed. (*See* ECF Nos. 17,

18.) On October 12, 2023, the Court held a hearing and heard oral argument.

For the reasons set forth below, Defendant's motion is denied.

## I.   Background

Plaintiff is a resident of Ohio and worked for Defendant from September 27, 2021 to December 15, 2021 as a full-time retail store associate in Hillsboro, Ohio. (ECF No. 1, PageID.3–4.) Defendant is a corporation with its principal place of business in Troy, Michigan. (ECF No. 6, PageID.29.)

Plaintiff alleges that Defendant had a policy requiring retail store associates to clock out before completing closing tasks, and that they could only leave the store when all employees are ready to leave. (ECF No. 1, PageID.5.) Plaintiff claims that these policies resulted in 20 to 30 minutes a day of unpaid work. (*Id.* at PageID.6.) Plaintiff also alleges that she worked about 60 hours each week but was not compensated for her overtime hours, and that Defendant did not make, keep, or preserve accurate records of her unpaid work. (*Id.* at PageID.7–8.)

2

## II.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is assessed "using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6)." *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Jackson v. Pro. Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). "A Rule 12(c) motion 'is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Id.* (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

## III.  Analysis

Defendant presents three arguments in its motion. First, Defendant argues that Plaintiff's OMFWSA claim cannot proceed as a Federal Rule of Civil Procedure 23 ("Rule 23") class action; instead, Plaintiff's claim must be brought as an "opt-in" collective action as described in the OMFWSA. (ECF No. 12, PageID.71.) Second, Defendant argues in the alternative that the Court should certify the first question to the Ohio Supreme Court. (*Id*. at PageID.82.) Third, Defendant argues that the Court should decline to exercise supplemental jurisdiction over the OMFWSA claim. (*Id*. at PageID.83.)

### A.  Application of Rule 23's opt-out or the OMFWSA's opt-in requirement

Plaintiff brings suit under the FLSA and the OMFWSA. Plaintiff "brings [her OMFWSA] action as a 'class action' pursuant to Fed. R. Civ. P. 23 to remedy violations of the [OMFWSA], Ohio [Rev. Code Ann. §] 4111.03." (ECF No. 1, PageID.2.) Section 4111.10 describes the liability of an employer who underpays an employee in violation of § 4111.03. It was amended in July 2022, to add the following provision:

> No employee shall join as a party plaintiff in any civil action that is brought under this section by an employee, person acting on behalf of an employee, or person acting on behalf of all similarly situated

4

employees unless that employee **first gives written consent to become such a party plaintiff and that consent is filed with the court** in which the action is brought.

Ohio Rev. Code Ann. § 4111.10 (West 2022) (emphasis added). In short, the OMFWSA requires prospective plaintiffs to opt-in to the suit. (*See* ECF No. 18, PageID.128.) This state law requirement is in conflict with Federal Rule of Civil Procedure 23, where Rule 23 class actions are "opt-out" and, thus, do not require written consent to join, nor that written consent be filed with the court. Fed. R. Civ. P. 23(b)(3), (c)(2)(B), (c)(3)(B). The Court must determine which approach should apply here.

"[F]ederal courts are to apply state substantive law and federal procedural law." *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).[1] When a state law and a federal rule are in conflict, courts in the Sixth Circuit use a two-part test to determine which controls. First, the Court must decide "whether the

---

[1] In *Erie*, *Hanna*, and *Shady Grove*, the courts exercised diversity jurisdiction over the state-law claims. Here, the Court has supplemental jurisdiction over the OMFWSA claim. (ECF No. 6, PageID.27 (agreeing that the Court has supplemental jurisdiction over the OMFWSA claim).) "A federal court exercising supplemental jurisdiction over state-law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999). Thus, the tests from *Erie*, *Hanna*, and those that follow them apply to cases where there is supplemental jurisdiction.

5

state law conflicts with a valid federal rule of procedure on point." *Hanna*, 380 U.S. at 469–70. If there is a conflict on point, the Court must determine "whether the federal rule applies under the Rules Enabling Act and relevant constitutional standards as set forth in Justice Stevens's controlling concurrence in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*" *Albright v. Christensen*, 24 F.4th 1039, 1044–45 (6th Cir. 2022) (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 421–25 (2010) (Stevens, J., concurring)).[2] If the federal rule applies, then the federal rule controls.

### i.   The OMFWSA conflicts with Rule 23

The Court must first determine if the federal rule and state law conflict. *Shady Grove*, 559 U.S. at 398–99; *see also Burlington N. R. Co.*

---

[2] The Sixth Circuit follows Justice Stevens' concurrence in *Shady Grove*. *Whitlock v. FSL Management, LLC*, 843 F.3d 1084, 1091 n.2 (6th Cir. 2016); *Albright*, 24 F.4th at 1044 n.1. Certain parts of Justice Scalia's opinion—the section describing the procedural history and the conflict on point between the New York law and the Federal Rules—received five votes. However, Justice Stevens did not join Justice Scalia's constitutional analysis of the Rules Enabling Act and concurred in the judgment. The Sixth Circuit has stated that Justice Stevens' concurrence controls because it "is the narrowest in support of the judgment." *Whitlock*, 843 F.3d at 1091 n.2; *see also Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the asset of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'" (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976))).

*v. Woods*, 480 U.S. 1, 4–5 (1987). Here, both parties agree that the state law and federal rule are in direct conflict and neither identifies a way to construe Rule 23 or the OMFWSA to avoid the conflict. (ECF No. 12, PageID.81; ECF No. 17, PageID.105.) The Court agrees that the OMFWSA and Rule 23 are in direct, unavoidable conflict. *See also Hine v. OhioHealth Corp.*, Case No. 2:22-cv-3969, 2023 WL 5599666, at *3 (S.D. Ohio June 30, 2023) (finding that Rule 23 and Ohio Rev. Code § 4111.10(c) directly conflict).

### ii.  *Rule 23 does not exceed the Rules Enabling Act*

The Federal Rules of Civil Procedure may not exceed their "statutory authorization [given under the Rules Enabling Act, 28 U.S.C. § 2072] or Congress's rulemaking power." *Shady Grove*, 559 U.S. at 398. The Rules Enabling Act provides that the Federal Rules of Civil Procedure may not "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072. Where the Rules and the substantive law of a state are in conflict, the Court must look to "the nature of the state law that [would] be[] displaced" by the Federal Rule before the Federal Rule can be applied. *Shady Grove*, 559 U.S. at 419.

7

To determine whether the Federal Rule applies hinges on "whether the state law actually is part of a State's framework of substantive rights or remedies." *Id.* "A federal rule . . . cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423. As set forth below, the Court concludes that the OMFWSA's opt-in requirement is procedural and that application of Rule 23 would not displace Ohio's "definition of its own rights or remedies." *Id.* at 419.

First, the *Shady Grove* concurrence states that "the bar for finding an Enabling Act problem is a high one." *Id.* at 432. "The mere possibility that a federal rule would alter a state-created right is not sufficient. There must be little doubt." *Id.* The Sixth Circuit takes a strict approach to this determination. In two recent cases, the Sixth Circuit ruled in favor of application of the Federal Rules, stating that "the Supreme Court has rejected every challenge to the Federal Rules that it has considered under the Rules Enabling Act." *Albright*, 24 F.4th at 1048 (quoting *Gallivan v. United States*, 943 F.3d 291, 294 (6th Cir. 2019)).

8

Second, the OMFWSA's opt-in requirement does not "define the scope of a substantive right or remedy." *Shady Grove*, 559 U.S. at 428. The Court's analysis of the state law cannot be based on whether it impacts litigation outcomes, as "almost any rule can be said to have substantive effects." *Id.* at 431–32 (quotation marks omitted). Instead, the Court must determine if the state law "defines the dimensions of a claim itself." *Id.* at 433–34 (quoting *id.* at 447 (Ginsberg, J., dissenting)).

The OMFWSA provides that "an employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek." § 4111.03(A). At the core of this state law is the right to overtime pay, and the ability to obtain a monetary remedy if overtime wages are not paid. How other claimants are included in the suit—whether it is opt-in or opt-out—is the mechanism through which the right is enforced. *See Glennon v. Anheuser-Busch, Inc.*, No. 4:21CV141, 2022 WL 18937383, at *5 (E.D. Va. Sept. 22, 2022) ("[M]embers of the putative class here are entitled to sue individually or jointly for unpaid wages and overtime under the Virginia statutes."). A requirement that individuals must opt-in or opt-out of the suit does not affect any individual's right to litigate

the case on their own nor alter any of the elements of the OMFWSA claim. §§ 4111.03–4111.031 (detailing elements of an OMFWSA overtime suit, including activities for which overtime not required). Further, it does not change the scope of the remedy: "overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek." § 4111.03(A). An opt-in requirement merely provides the method through which potential claimants can be bound by the outcome of a suit, and does not impact that individual's rights or remedies under the OMFWSA. Thus, the OMFWSA's requirement that individuals must opt-in to the action is a matter of procedure.

The Court's conclusion that the OMFWSA's opt-in requirement is procedural is consistent with the Supreme Court's analysis of the state law in *Shady Grove*. The New York state law at issue in *Shady Grove*, N.Y. C.P.L.R. § 901(b), barred class actions in "suits seeking penalties or statutory minimum damages" unless the statute specifically authorized class actions. *Shady Grove*, 559 U.S. at 396. A complete bar on class certification has clear implications on a plaintiff's remedies; as described in the *Shady Grove* dissent, the New York law "command[s] that a

10

particular remedy be available when a party sues in a representative capacity." *Id.* at 446–47. In contrast, the OMFWSA's opt-in requirement does not change the scope of the remedy, but merely dictates "a change in the process class members must follow in order to join the suit." *Roberts*, 321 F. Supp. 3d at 1257–58.

District courts in other circuits have reached a similar conclusion with regard to the procedural nature of opt-in requirements. *See Roberts v. C.R. England, Inc.*, 321 F. Supp. 3d 1251, 1257 (D. Utah 2018) ("The UCSPA establishes substantive consumer rights and corresponding remedies, but a potential UCSPA class member's entitlement to those rights do not change based on whether the process for joining a suit entails opt-in or opt-out notice of the proceeding."); *Glennon*, 2022 WL 18937383, at *4 ("[T]he opt-in requirement simply is not part of Virginia's framework of *substantive* rights and remedies – even if, like most procedural rules, it may have some effect on litigation outcomes."); *Gandy v. RWLS, LLC*, 308 F. Supp. 3d 1220, 1229 (D.N.M. 2018) ("The Court finds the nature of the opt-in collective action rule more significant to the analysis than the fact that it is a process applied only in NMMWA cases.").

11

Other courts have reached the opposite conclusion on state law opt-in requirements. In one case, *Hine v. OhioHealth Corporation*, the court found that, "[a]lthough it is a very close call . . . [the OMFWSA's] opt-in provision is so bound up in the rights or remedies of its overtime liability scheme that it is substantive for Rules Enabling purposes." 2023 WL 5599666, at *6. The *Hine* court's reasoning closely followed a portion of the *Shady Grove* concurrence. *Id.* at *5 (citing *Shady Grove*, 559 U.S. at 432–36). In that portion, Justice Stevens considered three characteristics of the New York law in determining that it was procedural: (1) the state law's broad application to all claims, federal and state; (2) the legislative history; and (3) the state law's location in the procedural portion of the state code. *Shady Grove*, 559 U.S. at 432–36.

The *Hine* court used these three characteristics to conclude that the OMFWSA's opt-in requirement is substantive. As to the first and third factors, the *Hine* court found that the opt-in requirement is not generally applicable to all claims and is located within the OMFWSA itself, not in Ohio's procedural code. *Hine*, 2023 WL 5599666, at *6. On the second factor, the court determined that the legislative history was "unhelpful."

12

*Id.* at *6 n.10.[3] Relying on these differences to distinguish the OMFWSA from the New York state law in *Shady Grove*, the court held that the opt-in provision "defines the scope of the remedies available for the substantive rights." *Id.* Other courts that reached the same conclusion—that opt-in laws implicate substantive rights or remedies—also focused on these three characteristics. *See Driscoll v. George Washington Univ.*, 42 F. Supp. 3d 52 (D.D.C. 2012); *Harris v. Reliable Reps. Inc.*, No. 1:13-cv-210 JVB, 2014 WL 931070 (N.D. Ind. Mar. 10, 2014).

The Court agrees with *Hine* on the differences between the OMFWSA and the New York law considered in *Shady Grove*. However, these distinctions do not require the outcome reached in *Hine*. Again, the *Shady Grove* concurrence stressed that "the bar for finding an Enabling

[3] Defendant argues that the "Ohio legislature's intention was clear," citing a report written by an attorney on the Ohio Legislative Service Commission. (ECF No. 18, PageID.128–129 (citing Paul Luzzi, Ohio Legislative Services Commission, Synopsis of House Committee Amendments, 2021-2022 S.B. 47, 134th Gen. Assemb., at 1 (Mar. 9, 2022).) This report "does not clearly describe a judgment that [the state law] would operate as a limitation [to the right or the remedy]." *Shady Grove*, 559 U.S. 433. The report states that there was a change, but does not describe the intent behind it. Further, another report from the Ohio Legislative Service Commission refers to the amendment as a "procedural change." *See* Shannon Pleiman, Ohio Legislative Service Commission, Final Fiscal Note & Local Impact Statement, 2021-2022 S.B. 47, 134th Gen. Assemb., at 1–2 (Apr. 5, 2022). After conducting its own review, the Court agrees with the *Hine* court that the legislative history is "by no means dispositive." *See Hine*, 2023 WL 5599666, at *6 n.10.

Act problem is a high one." 559 U.S. at 432; *see also id.* at 428 ("Although most state rules bearing on the litigation process are adopted for some policy reason, few seemingly 'procedural' rules define the scope of a substantive right or remedy."). Given the high bar a state law must pass to be found substantive, the Court declines to follow *Hine*'s conclusion that a state law is procedural only if it precisely matches the characteristics of *Shady Grove*'s New York law. *See also Roberts*, 321 F. Supp. 3d at 1259 (stating that heavy reliance on whether a state-law opt-in requirement is located within the text of the statute "appears misplaced" as the concurrence made only a "passing mention of the New York statute's location in the state code"). The determination of whether a state law defines substantive rights or remedies does not hinge on the degree to which the state law is similar to the New York law in *Shady Grove*.

The Court also disagrees with *Hine*'s statement that it is "logical" to conclude that the law is substantive because a contrary conclusion would allow claimants to avoid the opt-in requirement by filing their OMFWSA claim alongside a FLSA claim. 2023 WL 5599666, at *7. That is not the test set forth in the *Shady Grove* concurrence. *See* 559 U.S. at

14

431–32. Although application of an opt-in procedure may have a "practical effect" on litigants and could affect who brings suit, it does not enlarge or shrink the substantive rights or remedies available to plaintiffs. *Id.* at 435 n.18 ("It may be that without class certification, not all of the potential plaintiffs would bring their cases. But that is true of any procedural vehicle; without a lower filing fee, a conveniently located courthouse, [or] easy-to-use federal procedural rules, . . . many plaintiffs would not sue."). Instead, those considerations are relevant in a Rules of Decision Act inquiry, which is not present here.[4] *See id.* at 435–36 (citing *Hanna*, 380 U.S. at 469–70).

At the hearing, Defendant asserted—for the first time—that rights may flow in both directions and that the OMFWSA's opt-in procedure grants a substantive right to not be sued in a class action. *See Knepper v. Rite Aid Corp.*, 675 F.3d 249, 264 (3d. Cir. 2012) ("[Defendant] urges . . . that certification of a Rule 23 class action violates this prohibition because it would abridge the 'substantive right' not to be sued in a

---

[4] The Rules of Decision Act, 28 U.S.C. § 1652, concerns situations where there is no applicable federal rule. *Shady Grove*, 559 U.S. at 417. "[W]hen a situation is covered by a federal rule, the Rules of Decision Act inquiry by its own terms does not apply." *Id.* (citations omitted).

representative action."). An opt-out class action could result in a larger group of people involved in litigation because opting-out requires a person to take action. Defendant suggests that human behavior may lead potential members to simply remain in the class. *Cf. Clark v. A&L Homecare and Training Center, LLC*, 68 F.4th 1003, 1007 (6th Cir. 2023) (stating that "the decision to send notice of an [opt-in] FLSA suit to other employees is often a dispositive one" because the size and scale of the collective action can grow so vast that defendants are forced to settle). Defendant appears to be arguing that it has a substantive right to be confronted by a smaller group of litigants who have affirmatively decided to join a suit.

But Defendant's speculations about human behavior do not demonstrate that the opt-in requirement in the OMFWSA defines the scope of a substantive right. While we can theorize about the greater burden a defendant may face with an opt-in requirement, the burden a party faces is defined by the choices made by prospective plaintiffs, not the opt-in requirement itself. Additionally, the number of individuals involved in a suit could be the same, regardless of whether the OMFWSA or Rule 23 applied. It is possible that all eligible persons would join an

16

opt-in suit, just as it is possible that all eligible persons could leave an opt-out suit.

Further, as stated previously, the state law's impact on litigation outcomes does not render it substantive or procedural. *Shady Grove*, 559 U.S. at 431–32 ("[A]lmost any rule can be said to have substantive effects."). The *Shady Grove* concurrence asks whether the state law "defines the dimensions of a claim itself," not if it could lead to certain outcomes. *Id.* at 433–34. Indeed, the concurrence specifically rejects the state law's "practical effect" on a litigant as a factor in determining if the law is substantive. *Id.* at 435.

Thus, Rule 23's class action procedure applies in this case. There is no need to "wade into *Erie*'s murky waters" as the federal rule is not inapplicable nor invalid. *Id.* at 398. Accordingly, Defendant's motion for judgment on the pleadings is denied.

## B.    Certification to the Ohio Supreme Court

Defendant argues in the alternative that the Court should certify this question—whether Rule 23 or the OMFWSA's opt-in provision should apply—to the Ohio Supreme Court. (ECF No. 12, PageID.82.)

It is within the district court's discretion to certify a question to a state supreme court. *Lehman Bros v. Schein*, 416 U.S. 386, 391 (1974). The question must be novel or unsettled. *Jones v. Coleman*, 848 F.3d 744, 754 (6th Cir. 2017) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 79 (1997)). The question must also be difficult. *See Ky. Empls. Ret. Sys. v. Seven Ctys. Servs. Inc.*, 901 F.3d 718, 731–32 (6th Cir. 2018) ("[F]ederal courts . . . 'generally will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks.'" (quoting *Smith v. Joy Techs., Inc.*, 828 F.3d 391, 397 (6th Cir. 2016))). Additionally, Local Rule 83.40 states that an order of certification must include findings that "(1) the issue certified is an unsettled issue of State law, and (2) the issue certified will likely control the outcome of the federal suit, and (3) certification of the issue will not cause undue delay or prejudice."

This question is not suitable for certification to the Ohio Supreme Court because it is distinctly an issue of federal law, not state law. The issue is whether application of Federal Rule 23 to this state-law claim would violate the federal Rules Enabling Act. This is assuredly a federal question.

Accordingly, the Court denies Defendant's request to certify the question to the Ohio Supreme Court.

## C.   The exercise of supplemental jurisdiction over the state-law claim

Defendant also argues that the Court should decline to exercise supplemental jurisdiction over the state-law claim. (ECF No. 12, PageID.83.) District courts may decline to exercise supplemental jurisdiction if "the claim raises a novel or complex issue of State law" or if the claim "substantially predominates over the claim . . . over which the district court has original jurisdiction," among other reasons. 28 U.S.C. § 1367(c)(1)–(2).

Defendant cites *De Ascencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003), but does not explain why this issue is a "novel or complex issue of state law." (ECF No. 12, PageID.83.) Additionally, Defendant argues that there are "'significant differences' between a state law class action where [Rule 23] applies and an FLSA collective action." (ECF No. 18, PageID.131.) At the hearing, Defendant argued that, because a Rule 23 class is opt-out, and an FLSA collective action is opt-in, that the Rule 23 class would be larger and, as a result, predominate over the FLSA claim.

The Court will exercise supplemental jurisdiction over the OMFSWA claim. Whether a state law defines substantive rights or remedies is a question that many federal courts have addressed. *See, e.g.*, *Hine*, 2023 WL 5599666. Further, numerous federal courts have allowed state-law claims to proceed in tandem with FLSA claims. *See Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2012) ("[T]here is no inherent incompatibility between an opt-in FLSA collective action and an opt-out Rule 23 class action."). Finally, though the FLSA collective action could be smaller than a Rule 23 class, this is not an adequate reason to decline to exercise supplemental jurisdiction.

Accordingly, the Court denies Defendant's request that the Court decline to exercise supplemental jurisdiction over the state-law claim.

## IV.  Conclusion

For the reasons set forth above, the Court DENIES Defendant's motion for judgment on the pleadings.

IT IS SO ORDERED.

Dated: December 8, 2023                    s/Judith E. Levy
         Ann Arbor, Michigan               JUDITH E. LEVY
                                           United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 8, 2023.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager
